---

WYKOFF et al. v. BISSELL.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

REAL-ESTATE BROKER—RIGHT TO COMMISSIONS.
    A complaint alleged that plaintiff, a real-estate broker, was employed by defendant to negotiate a sale or exchange of specified property of defendant, who promised to pay him a specified sum for his services in effecting the same, and that through plaintiff's efforts and services defendant did effect a sale or exchange to a specified person, introduced and brought to him by plaintiff. *Held*, that mere proof that plaintiff procured and submitted to defendant a list of properties for sale, which included the property finally exchanged for defendant's property, was insufficient to warrant a recovery.

Appeal from trial term.

Action by Jacob V. D. Wykoff and others against Pelham St. George Bissell. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William T. Schley, for appellant.
Maurice Untermyer, for respondents.

WILLIAMS, J. The action was brought to recover for services of the plaintiffs in negotiating for defendant an exchange of real property in the city of New York. The complaint alleged that in May, 1896, the defendant employed the plaintiffs as brokers to nego-

tiate a sale or exchange of property of defendant at the corner of Broadway and Fourth streets; that the defendant promised to pay the plaintiffs, for their services in effecting such sale or exchange, the sum of $3,000; that the plaintiffs rendered services in and about the negotiation, sale, and exchange of the property for the defendant so that, through the efforts and services of the plaintiffs, the defendant effected a sale or exchange thereof to a person introduced and brought to defendant by the plaintiffs, to wit, one John T. Williams; and that by reason of these premises the defendant was indebted to the plaintiffs for work, labor, and services, as brokers in the sale or exchange of the property, in the sum of $3,000.

The only material question arising upon this appeal is whether there was sufficient evidence in the case to sustain the verdict of the jury. The contract, as sworn to by the plaintiffs on the trial, was that, if the defendant made an exchange of his property for any of the properties submitted to him by the plaintiffs, he (the defendant) would pay $3,000 commissions. This contract cannot fairly be construed as an agreement that the defendant would pay the commissions unless the exchange was brought about by the plaintiffs under such circumstances as would entitle them to brokers' commissions, under the well-settled principles of law applicable to the right to recover such commissions. If the plaintiffs were entitled to commissions at all under the proofs in the case, then the amount thereof was agreed to be $3,000. The plaintiffs could not recover $3,000 upon any other theory than that stated in their complaint, to wit, that they rendered services for the defendant in and about the negotiation, sale, and exchange that, through their efforts and services, the sale or exchange was effected. There would seem to be an entire absence of proof to sustain such a cause of action. In Sibbald v. Iron Co., 83 N. Y. 378, it is said:

"The duty he [the broker] undertakes, the obligation he assumes as a condition of his right to demand commissions, is to bring the buyer and seller to an agreement. In that all the authorities substantially concur, although expressing the idea with many differences of phrase and illustration. The description and definition of a broker involves this view of his duties. Story says: 'The true definition of a "broker" seems to be that he is an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or 'navigation, for a compensation, commonly called "brokerage."' Story, Ag. § 28. * * * We do not mean that the broker must necessarily be present, and an active participator in the agreement of buyer and seller, when that agreement is actually made. He may just as effectually produce and create the agreement, although absent when it is completed, and taking no part in the arrangement of its final details. * * * In Lloyd v. Matthews, 51 N. Y. 132, the phrase used was that the broker was entitled to reward when the sale was effected through his agency as the procuring cause; and in Lyon v. Mitchell, 36 N. Y. 237, the broader language is used, that his efforts must have led to the negotiations that resulted in the purchase of the vessel."

There is no proof in the case that the plaintiffs ever brought the defendant and Williams together, ever introduced them to each other, or that the plaintiffs' efforts led to any negotiations between the parties, or that the exchange was effected through the plaintiffs' agency as a procuring cause. The most that appears in the case is that the plaintiffs procured from the agent of Williams a list of properties

which Williams had for sale, and submitted this list to the defendant; that upon this list was the property which was finally exchanged for the defendant's property. The only evidence in the case that Williams and the defendant were brought together or led to negotiate with reference to the exchange of the properties which was finally effected is that such meeting of the parties and negotiations with reference to this property were brought about by one Mrs. French, the defendant's mother-in-law, who was in no way connected with the plaintiffs. The theory upon which the verdict was rendered seems to have been that the agreement made by the defendant was that if he made the exchange he would pay the plaintiffs $3,000 commissions, whether the exchange was effected through the agency of the plaintiffs as procuring cause or not; and it was apparently assumed that if such a contract was made by the defendant, and he afterwards made the exchange, he was liable for the $3,000, even though the only part which the plaintiffs had in the matter was to present the list of property which Williams had for sale or exchange to the defendant. As we have seen, this was not, properly construed, the contract entered into by the defendant. We think there was an entire failure on the part of the plaintiffs to establish the cause of action set out in their complaint, and that the motion to dismiss the complaint, made at the close of the evidence, should have been granted. Certainly the motion for a new trial, upon the minutes of the court, should have been granted. The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event. All concur.